IN THE COUNTY COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
CRIMINAL DIVISION

STATE OF FLORIDA                           CASE NO.:   08-CM-026890

vs.                                        DIVISION:   C

BRENT YESSIN,
      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS

THIS CAUSE having come before the court for hearing on June 8, 2009, pursuant to the Motion to Dismiss filed by Defendant, Brent Yessin, and the court having reviewed said Motion, along with the Amended Traverse and Demurrer filed by the State, and having considered the testimony of Officer Robert Newberry presented at the hearing, as well as the argument, Memoranda of Law, and Supplemental Responses submitted by the parties, and being otherwise fully advised in this matter, does hereby make the following ruling:

### FACTUAL BACKGROUND

On December 21, 2008, several officers employed with the Tampa Police Department, including Officer Robert Newberry, responded to an alleged fight involving two females which occurred inside the restroom and bar area of SideBerns restaurant. When the officers arrived, the two females, later identified as Aimee Dias and Jodi Jacolow, were still arguing with each other. Defendant was a patron inside the restaurant and was not involved in the altercation between the two females. However, Defendant was an acquaintance of Ms. Jacolow.

"Exhibit B"

As part of his investigation, Officer Newberry was speaking with the restaurant manager in an effort to determine who was involved in the dispute when Defendant approached the manager and stated that he could deal with the situation and the people involved. There is no evidence indicating how the manager responded to Defendant's statement. At some point, Ms. Dias and Ms. Jacolow were escorted outside of the restaurant by the officers in order to obtain their separate accounts of what had occurred. Defendant did not initially follow the officers and the females when they went outside. Officer Newberry indicated that he was not planning on arresting anyone when they initially arrived on the scene and stated that the situation was under control when Ms. Dias and Ms. Jacolow were being interviewed outside.

Officer Newberry interviewed Ms. Dias first. Based upon the State's Amended Traverse, Officer Newberry was interviewing Ms. Dias when Defendant approached Ms. Dias and asked her if his services as an attorney were required. Ms. Dias declined this offer and Officer Newberry was able to complete his interview with Ms. Dias without any additional involvement by Defendant. Officer Newberry then proceeded to interview Ms. Jacolow. During this interview, Defendant approached again and expressed an interest in speaking with Ms. Jacolow. The State admits that Officer Newberry gave Defendant the opportunity to speak with Ms. Jacolow about the possibility of providing her with legal representation. After speaking with Defendant, Ms. Jacolow denied Defendant's offer of legal representation. Officer Newberry asked Defendant to leave at this point. Defendant attempted to continue his conversation with Ms. Jacolow and was again told by Officer Newberry to leave the area. Defendant was arrested shortly thereafter for Obstructing or Opposing and Officer Without Violence. At the time of his

arrest, Defendant was no longer speaking with Ms. Jacolow and had stepped away from the immediate area where Officer Newberry was interviewing Ms. Jacolow.[1] As a result of their investigation, the officers determined that was no basis to arrest either Ms. Dias or Ms. Jacolow for the commission of any criminal offenses.

The facts established in this case show that Defendant did not physically touch, nor threaten, any of the officers. Defendant was not angry or abusive at the time, nor argumentative with the officers. Additionally, none of the officers were in fear for their safety because of Defendant's presence at the scene. The facts further show that the business activities of the restaurant were not disrupted during the police investigation. Besides the act of conducting an investigation, the officers were not in the process of executing any arrest or search warrants, were not seeking emergency assistance from anyone at the scene, including Defendant, and were not in the process of making an arrest before they made the decision to arrest Defendant. There is also no evidence demonstrating that any of the officers involved in this investigation had a reasonable suspicion to believe that Defendant was engaged in criminal activity prior to his arrest.

---

[1] Under Florida law, the State is required to specifically deny the allegations in the Motion to Dismiss. Under Fla. R. Crim. P. 3.190(d), the State may traverse or demur to a motion to dismiss that alleges factual matters. The rule requires that factual matters alleged in a motion to dismiss "shall be deemed admitted unless specifically denied by the state in the traverse." The court is required to deny the motion to dismiss if the state files a traverse "that, with specificity, denies under oath the material facts alleged in the motion to dismiss." In State v. Kalogeropoulous, 758 So.2d 110 (Fla. 2000), the Florida Supreme Court considered the sufficiency of the State's traverse in defeating a motion to dismiss. The Court interpreted Rule 3.190(d) to require that the State "need only specifically dispute a material fact alleged by the defendant or add additional material facts that meet the minimal requirement of a prima facie case." Id. at 112. The court further stated:"If the facts in the motion that the State does not specifically deny support the defendant's position but additional facts exist that would create a material issue preventing the granting of the motion, the State should set forth those additional facts in the traverse just as a non-movant would have to do in a counter-affidavit in order to defeat a motion for summary judgment." Id. The State, in its Amended Traverse, failed to specifically deny or refute Defendant's allegation that immediately prior to his arrest, he had terminated his conversation with Ms. Jacolow and was walking away from the area where she was being interviewed by Officer Newberry.

## II. ANALYSIS

This case involves a difficult determination for the Court due to the fact that most appellate cases dealing with the offense of obstructing or opposing an officer without violence focus on the unique facts presented in each case. The case at hand is no different. Under section 843.02, Florida Statutes (2008), a conviction for the offense of obstruction or opposing an officer without violence requires proof that: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the Defendant constituted obstruction or resistance of that lawful duty. In reaching its decision in this matter, the court has relied upon the following case law as establishing the legal principles which govern obstruction cases.

The courts have generally held that an officer is engaged in the lawful execution of a legal duty when the officer is making an arrest or operating under a reasonable suspicion to believe an individual is engaged in criminal activity. In *C.H.C. v. State*, 988 So.2d 1145 (Fla. 2d DCA 2008), a police officer responded to an alleged disturbance after another officer had requested backup. When the officer arrived at the scene, he observed the defendant walking down a flight of stairs surrounded by a large group of people. He also observed the defendant clinching his fists and yelling profanities. When the officer approached the defendant to speak with him, the defendant ran from the scene. In reversing the defendant's delinquency adjudication for obstructing or opposing an officer without violence, the court state that in cases involving an investigatory detention, "it is necessary for the State to prove that the officer had a reasonable suspicion of criminal activity that would support the detention" Id. at 1147. The court concluded that the State failed to prove that the officer had a reasonable suspicion the defendant was

engaged in criminal activity, and therefore, failed to show that the officer "was engaged in the lawful execution of a legal duty when he ordered C.H.C. to stop..." Id.

Additionally, in *J.A.S.R. v. State*, 967 So.2d 1050 (Fla. 5th DCA 2007), the defendant was charged with battery on a law enforcement officer after interfering with an officer's attempt to remove his brother from an amusement park for unruly behavior. At the time of the alleged offense, the officer was working off-duty, but was wearing his police uniform. When the officer grabbed the defendant's brother by the arm to escort him from the property, the defendant grabbed hold of his brother and told the officer to release him. When the officer attempted to push the defendant away, the defendant allegedly battered the officer by grabbing his arm. In reversing the defendant's conviction for battery on a law enforcement officer, the court stated that because the officer was not effecting an arrest at the time, the main issue for the court was whether the officer was engaged in the lawful performance of his duties at the time of the alleged offense. The court concluded that because the officer was not attempting to arrest the defendant's brother, nor did the officer have reasonable suspicion that the defendant's brother was engaged in criminal activity or was armed, the officer "was not engaged in the lawful performance of his duties as a police officer at the time of the battery." Id. at 1052.[2]

---

[2] Florida courts have recognized a distinction when the Defendant is not the individual subject to the execution of the legal duty by the officer. In *D.A.W. v. State*, 945 So.2d 624, 626 (Fla. 2d DCA 2006), the Second District Court explained this distinction as follows: "... when the officer is not executing process on that person, legally detaining 'that person,' or has not asked that person for assistance in an ongoing emergency, then 'that person's' actions must normally be physically obstructive, not merely verbally harassing, in order to support a conviction for obstructing an officer without violence." Under the ruling in *D.A.W.*, a person's exercise of free speech, without more, in an open public place "must do more than merely irritate, annoy, or distract the officer to constitute a crime." Id. at 627.

5

As the above-cited cases demonstrate, the lawful execution of a legal duty exists when an officer is making an arrest or has a reasonable suspicion to believe the defendant is engaged in criminal activity. The court concludes that neither of those circumstances is present under the facts established in this case.

In *Davis v. State*, 973 So.2d 1277 (Fla. 2d DCA 2008), officers with the Seminole Police Department responded to the Seminole Hard Rock Casino to investigate a suspicious incident that had occurred in one of the restaurants. Upon entering the restaurant, the officers spoke with security and restaurant employees who pointed out the defendant as the individual involved in the incident. The officers approached the defendant and requested that he move from his table to a closed off portion of the restaurant. The defendant initially complied, but became agitated at some point after telling the officers that he had to use the bathroom and just wanted to finish his meal. The officers told the defendant to relax and remain in his seat. The defendant decided to jump out of his seat and pushed one of the officers into some tables. The defendant was arrested for battery on a law enforcement officer and resisting arrest with violence. After a jury trial, the defendant was found guilty of the lesser offense of resisting arrest without violence.

On appeal, the defendant argued that the trial court erred in denying his motion for judgment of acquittal because the state failed to prove that the officers were engaged in the lawful execution of a legal duty at the time of the offense. In reaching its decision, the court stated that in determining "whether an officer was engaged in the lawful execution of a legal duty, we must apply the legal standards governing the officer's duty

at the point that the resistance occurs." Id. at 1279.[3] The court analyzed this case from the perspective of an investigatory detention and stated that "it is necessary for the State to prove that the officer had a reasonable suspicion of criminal activity that would support the detention." Id. The court concluded that although the State was able to show that the officers responded to the scene based upon a complaint by employees of the restaurant of a suspicious incident, they failed to establish any basis to demonstrate a reasonable suspicion of criminal activity by the defendant. Additionally, the court stated that the "fact that an employee on private property makes a complaint to the police does not vitiate the requirement that a detention to investigate the complaint be supported by reasonable suspicion of criminal activity." Id. The court specifically rejected the State's argument that the element of a lawful execution of a legal duty can be established with testimony from the officers that they were responding to a complaint by employees of the restaurant. Accordingly, the court held that the state failed to demonstrate the officers were engaged in the lawful execution of a legal duty and reversed the defendant's conviction for resisting an officer without violence.

The *Davis* case presents facts that are similar to the case before this court. The officers responded to a complaint by employees of SideBerns regarding an alleged disturbance. It is alleged that the obstructive conduct by Defendant occurred during the investigation of that disturbance. As clearly delineated in the *Davis* case, the fact that the officers responded to the restaurant following a complaint of a disturbance made by employees is not sufficient, by itself, to constitute the lawful execution of a legal duty.

---

[3] *See also Tillman v. State*, 934 So.2d 1263, 1271 (Fla. 2006), where the court held that the "courts must apply the legal standards governing the duty undertaken by the law enforcement officer at the point that an assault, battery, or act of violent resistance occurs. These standards effectuate the Legislature's intent in making lawful execution of a legal duty an element of these crimes."

7

Additionally, it is important to note that at the time of Defendant's arrest, the court has specifically found that Defendant had terminated his conversation with Ms. Jacolow and was walking away from the immediate area where she was being interviewed by Officer Newberry. In essence, Defendant had complied with the request by Officer Newberry to stop his conversation with Ms. Jacolow and was leaving the area. Based upon these facts and the *Davis* decision, the court concludes that Defendant was not committing any act which obstructed or opposed the actions of law enforcement at the specific time of his arrest.

The court also relies on the decision of the First District Court in *English v. State*, 293 So.2d 105 (Fla. 1st DCA 1974) which present some facts that are analogous to the case at hand. In *English*, the police were investigating an alleged altercation between a minor and two adults that occurred at a bar. The defendant was the manager of the bar who had told the minor to leave before he was jumped by the two adults. The minor had been escorted from the bar before the police arrived. Upon their arrival, the police entered the bar, bringing the minor with them, and proceeded to interview "two complainants." After being advised that the police were in the lounge, the defendant came into the room and stood between the officers and the two complainants they were interrogating. The defendant noticed that the minor was inside the lounge and requested the officers to take him outside and continue their investigation there. The officers warned the defendant that he was interfering with their investigation. After the defendant insisted that the officers conduct their investigation outside, the officers asked the defendant to exit the lounge area, which he agreed to do. However, when the defendant refused to leave the package store adjacent to the lounge, he was arrested for resisting

8

arrest. At trial, the defendant was found guilty of resisting arrest without violence. On appeal, the court concluded that the evidence was insufficient to sustain the defendant's conviction, and therefore, reversed the conviction.[4] Similar to the case at hand, the court concludes that Defendant's act of standing between Officer Newberry and Ms. Jacolow in order to speak with Ms. Jacolow is insufficient to sustain a conviction for obstructing or opposing without violence.

Finally, in *W.W. v. State*, 993 So.2d 1182 (Fla. 4th DCA 2008), deputies with the Martin County Sheriff's Office responded to a Texaco station regarding an alleged shoplifting incident. A witness at the scene identified the alleged perpetrator as A.C. The deputies proceeded to the home of A.C.'s father in an effort to locate A.C. After speaking with the father, the deputies were directed to the defendant's home. Upon making contact with the defendant, the deputies asked the defendant if A.C. was inside the house. The defendant said no and allowed the deputies to come inside the home. When the deputies began searching, they discovered that an exterior side door was ajar, and one of the deputies heard a door open and close. The defendant then admitted that A.C. had been inside the house. The defendant was charged with obstructing or opposing an officer without violence because he lied to the deputies about the whereabouts of A.C.

In reversing the trial court's order denying the defendant's motion for judgment of dismissal, the court focused on the issue of whether the deputies were engaged in the lawful execution of a legal duty at the time of the offense. The court relied upon the

---

[4] *See also R.S. v. State*, 531 So.2d 1026 (Fla. 1st DCA 1988)(officers were investigating a disturbance at an apartment complex which allegedly involved the defendant. While attempting to interview defendant and his friend, the defendant refused to answer any questions and told his friend not to answer the officer's questions. The officer instructed the defendant to be quiet, but the defendant kept telling his friend not to say anything. The defendant was neither verbally abusive nor threatening to the officer. The defendant was arrested and charged with obstructing a police officer without violence. On appeal, the Court reversed his adjudication of delinquency and held that the actions of the defendant did not sufficiently impede the officers so as to constitute a criminal offense.

Second District Court's opinion in *D.G. v. State*, 661 So.2d 75 (Fla. 2d DCA 1995) in defining those police actions which constitute the lawful execution of a legal duty when applying the obstruction statute to verbal conduct.[3] In concluding that the deputies were not engaged in the lawful execution of a legal duty, the court stated the following:

> Here, the deputy's investigation, though performed during the course of his general duties, does not fall within the above category of legal duties. The state does not contend that Deputy Beatty was serving process or asking for emergency assistance. And although Deputy Beatty initially testified that his purpose in coming to appellant's residence was to apprehend A.C., he later clarified that he was not there to arrest A.C. or to place him into custody, but merely to question him about the shoplifting incident at the Texaco station. Moreover, the trial judge determined that Deputy Beatty was merely investigating a crime. Id. at 1185.

Based upon the facts before this court, it is clear that the officers responding to SideBerns that evening was merely investigating an alleged crime. As the investigation unfolded, it was ultimately determined that no criminal offense had been committed by either Ms. Dias or Ms. Jacolow as a result of the incident inside the restaurant. Therefore, under the authority of *W.W. v. State*, Defendant's conduct during this investigation would not have occurred while law enforcement was engaged in the lawful execution of a legal duty and, consequently, the court concludes that Defendant cannot properly be charged with obstruction or opposing an officer without violence in this case.

Furthermore, given the court's finding that the actions by Defendant were only verbal in nature, the cases relied upon by the court hold that word's alone can rarely, if

---

[3] In *D.G.*, the officers went to D.G.'s home to look for an alleged burglar known to associate with D.G. Shortly after the officers arrived, D.G. came outside and began protesting loudly and obnoxiously. D.G. also refused to answer the officers' questions and encouraged his mother not to cooperate with the officers. However, D.G. never threatened any of the officers. Based upon these facts, the court reversed D.G.'s delinquency adjudication for obstructing a police officer without violence; *see also Jay v. State*, 731 So.2d 774 (Fla. 4th DCA 1999) where the defendant was convicted of resisting arrest without violence when, during a prostitution sting operation, the defendant told two females that the individual they were speaking to was a cop. The court reversed the defendant's conviction and held that the officer was not engaged in the lawful execution of a legal duty at the time. The court distinguished the actions of an officer in the "lawful execution of a legal duty and a police officer who is merely on the job." Id. at 775.

ever, rise to the level of an obstruction. The court finds that this case is no exception to that proposition and concludes that Defendant's verbal conduct was not obstructive in nature. Additionally, based upon the facts of this case, Defendant's refusal to obey the commands of a law enforcement officer cannot support a conviction for obstruction or opposing an officer without violence.[6]

In further clarifying its decision, the court believes it is necessary to specifically address the cases cited by the State to support its position. The State relies upon *Yarusso v. State*, 942 So.2d 939 (Fla. 2d DCA 2006) for the proposition that a consensual encounter by law enforcement constitutes the lawful execution of his or her legal duties. In *Yarusso*, law enforcement officers were working a high-burglary area when they observed a pick-up truck, with its lights off, in the parking lot of a closed car dealership. The officers were in plain clothes and approached the defendant as he walked in front of a row of cars. After some casual conversation, the officers identified themselves and requested identification from the defendant. The defendant went to his pick-up truck followed by the officers. The defendant jumped inside the truck, locked the door, started the truck, and began to back up. Despite the officers' commands to stop, the defendant sped away and hit one of the officers' hands with his rearview mirror. The defendant was charged with numerous offenses including resisting arrest with violence.

On appeal, the court reversed the defendant's conviction for resisting arrest. The court stated that the interaction between the defendant and the officers was a consensual

---

[6] *See J.G.D. V. State*, 724 So.2d 711 (Fla. 3d DCA 1999)(The defendant was charged with resisting arrest without violence for alleging interfering with a police investigation of a burglary. In the presence of an unruly crowd, the defendant was loud and profane, and instructed by the police to leave the apartment complex where the investigation occurred. The court stated that the defendant's protest was non-violent, and concluded that the police order for defendant to leave was not "justified by any cognizable wrongdoing on the part of the juvenile, either by his words .... or, as shown by the fact that a trespass charge was abandoned, in his presence at the scene." Id. at 712.

encounter and that, "as a general proposition, a law enforcement officer who engages a citizen in a consensual encounter is engaged in the lawful execution of his or her legal duties." Id. at 942. However, because a citizen has an inherent right to voluntarily terminate the encounter at any time, the court ruled that the defendant's act of driving away expressed his intention to terminate the consensual encounter with the officers. Therefore, at the time of the alleged resistance, the officers were not engaged in the lawful execution of a legal duty.

This court believes that the *Yarusso* decision is distinguishable for a number of reasons. *Yarusso* involves the defendant's physical act of fleeing from law enforcement officers and, therefore, is not limited to mere verbal conduct that forms the basis of the obstruction charge in this case. Furthermore, under *Yarusso*, the alleged resistance occurred as a result of the officers' direct encounter with the defendant. In the case at hand, the alleged consensual encounter suggested by the State occurred between Officer Newberry and Ms. Jacolow, and not with Defendant. The facts demonstrate that Ms. Jacolow voluntarily spoke with Defendant and that Officer Newberry initially consented to their communication. Therefore, even if the court were to accept the State's argument, the court concludes that any consensual encounter between Ms. Jacolow and Officer Newberry was terminated by her decision to speak with Defendant.

Consistent with the facts established in this case, the court concludes that the circumstances surrounding Defendant's arrest must be analyzed under the legal standards applicable to an investigatory detention, as opposed to a consensual encounter. The facts of this case show that when the officers responded to SideBerns, they escorted Ms. Dias and Ms. Jacolow outside of the restaurant and separated them in order to conduct

interviews. It is clear that these actions by the officers were carried out in the context of an investigatory detention. As the *J.A.S.R.* decision illustrates, the officer must be in the process of making an arrest or have reasonable suspicion of criminal activity in order to be executing the lawful performance of a legal duty under these circumstances. The court has found that neither of those circumstances exist in this case. Therefore, the court concludes that this case is specifically controlled by *W.W. v. State* and *Davis v. State*, cited above. Assuming the State's argument had merit, all of the cases cited by the court, including the Second District Court's opinion in the *Davis* case, would have reached different conclusions.

The State further relies on *M.J. v. State*, 994 So.2d 485 (Fla. 3rd DCA 2008) for the proposition that the investigation of a criminal offense is the lawful execution of a legal duty. However, as stated by the State in its Supplemental Response, the officer in *M.J.* "was investigating a criminal offense in which the officer had a reasonable suspicion to believe the defendant had committed." In the case at hand, the officers had no basis to believe that Defendant had, or was, engaged in any criminal activity. Therefore, *M.J.* is factually distinguishable. The State's reliance on *Wilkerson v. State*, 556 So.2d 453 (Fla. 1st DCA 1990) is also misplaced. The *Wilkerson* decision stands for the proposition that a police officer can lawfully demand a citizen to leave an area where police are attempting to make arrests. Under the facts before this court, the officers were not attempting to make an arrest at the time of the alleged obstructive conduct by Defendant. Therefore, the *Wilkerson* decision is also factually distinguishable.

Finally, the State relies upon *In the Interest of J.B.*, 621 So.2d 489 (Fla. 4th DCA 1993) for the proposition that the investigation of a 911 call is within an officer's legal

duty. The facts of this case involve an emergency situation and the reasonableness of an officer's actions in responding to that emergency. The court concludes that this case is not persuasive for two reasons. The emergency facts that existed in J.B. are not present in this case. At the time Defendant was arrested, the evidence indicates that the individuals involved in the initial altercation had been separated and according to Officer Newberry's testimony, "the situation was under control." Additionally, the decision in *J.B.* preceded the Fourth District Court's decision in *W.W. v. State*. As discussed above, the holding in *W.W.* stands for the proposition that the investigation of an alleged criminal offense does not constitute the execution of a legal duty by law enforcement. Therefore, the court concludes that the opinion in *W.W.* is the appropriate legal authority for the court to apply in this case.

In summary, this court concludes that officers with the Tampa Police Department were not engaged in the execution of a legal duty at the time they arrested Defendant. Based upon the decision in *W.W. v. State*, the investigation of a crime does not constitute the execution of a legal duty by law enforcement. Even if the court were to accept the argument of the State that the officers were engaged in the lawful execution of a legal duty under a consensual encounter, that encounter included the right of Ms. Jacolow to speak with Defendant. Furthermore, the law is abundantly clear that mere words, as occurred in this case, are generally insufficient to constitute obstruction. Under the facts of this case, there is no evidence that Defendant physically obstructed or opposed the officers. There is also no evidence that he threatened the officers, encouraged anyone to obstruct or oppose the officers, or committed any act that caused the officers to fear for their safety or the safety of others. Additionally, there is no evidence that the officers had

reasonable suspicion to believe that any of the individuals involved in the incident that evening were engaged in the commission of a crime. Given the totality of the circumstances before the court, the conduct ascribed to Defendant can be characterized as annoying and frustrating, but not obstructive under Florida law.

WHEREFORE, the court concludes that the facts presented to the court do not establish a prima facie case of guilt against Defendant and, therefore, Defendant's Motion to Dismiss the charge of Obstructing or Opposing an Officer Without Violence is hereby granted.

DONE AND ADJUDGED in Tampa, Hillsborough County, Florida, this ____ day of July, 2009.

ORIGINAL SIGNED
CONFORMED COPY

JUL 0 8 2009

JOHN N. CONRAD
COUNTY JUDGE

JOHN N. CONRAD
COUNTY COURT JUDGE

Copies to: Katrina Luetzow, Esquire, Office of the State Attorney, 419 N. Pierce Street, Tampa, FL 33602
Mark G. Rodriguez, Esquire, 701 S. Howard Avenue, Ste. 201, Tampa, FL 33606