UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENT YESSIN,

Plaintiff,

-vs-                                                           CASE NO.:  8:13-CV-001252-VMC-EAL

THE CITY OF TAMPA, FLORIDA, a
Municipal Corporation, OFFICER
MICHAEL LEAVY, OFFICER JOSEPH
REESE, OFFICER DUSTIN KENNEDY
AND OFFICER SHANNON MURPHY,

Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, MICHAEL LEAVY,
JOSEPH REESE, DUSTIN KENNEDY AND SHANNON MURPHY**

COMES NOW, Plaintiff, Brent Yessin, (hereinafter "Mr. Yessin") by and through his undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and hereby opposes the Motion for Summary Judgment of Defendants, Michael Leavy, Joseph Reese, Dustin Kennedy and Shannon Murphy (hereinafter "Officers") and states:

**PROCEDURAL BACKGROUND**

On December 19, 2012, Mr. Yessin filed this lawsuit seeking redress for violation of his rights protected by the United States Constitution. (Dkt. 2.) Mr. Yessin's complaint asserts that the Officers violated his Fourth Amendment rights pursuant in two respects. First, his arrest was unlawful and no reasonable law enforcement officer could have reasonably believed his conduct violated the criminal laws of Florida. (Dkt. 2, Counts I through IV.) Second, the force used against him was objectively excessive regardless of the legality of his arrest. (Dkt. 2, Counts I through IV.) Mr. Yessin's

complaint also asserts that customs and practices of the City were a moving force behind the Officers of violations of his constitutional rights. (Dkt. 2, Count V.) First, for years prior to December 21, 2008, the City of Tampa Police Department employed a persistent and widespread practice of arresting citizens for violations of Fla. Stat. § 843.02, Florida Statutes, for conduct that did not, as a matter of well-established Florida law, constitute interference and obstruction. (Dkt. 2 ¶54, 58.) Additionally, Mr. Yessin contends that the excessive force the Officers used against him were the results of the customs and practices of the Tampa Police Department in failing to supervise its officers' use of force and failing to discipline officers who used excessive force in conducting stops and arrests. (Dkt. 2 ¶57, 59.)

The Officers have filed a motion for summary judgment claiming qualified Immunity for both the unlawful arrest of Mr. Yessin and the use of excessive force against him. (Dkt. 70.) As explained below, the motion should be denied.

## STANDARD OF REVIEW

"Summary judgment is appropriate where the Court is satisfied 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.Rule Civ. Proc. 56(c)). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." Id. This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. Importantly, "[w]hen a defendant moves for summary judgment on qualified immunity, [the court must] view the facts in the light most favorable to the plaintiff." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1272 n.1 (11th Cir. 2010) (citing Swint v. City of Wadley, 51 F.3d 988, 994 (11th Cir.1995)).

2

Furthermore, "'when conflicts arise between the facts evidenced by the parties, [courts] credit the nonmoving party's *version*.'" Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006) (emphasis in original) (quoting Evans v. Stephens, 407 F.3d 1272, 1278 (11th Cir.2005)).

## **STATEMENT OF FACTS**

**Admissions by the City and Officers**

The answers and affirmative defenses that both the Officers and the City filed in response to Mr. Yessin's complaint conclusively establish certain critical facts relevant to show that the Officers violated Mr. Yessin's Fourth Amendment rights and are not entitled to summary judgment on the issue of qualified immunity. These admitted facts alone present disputed issues of material fact as to whether the Officers arrested Mr. Yessin without arguable probable cause and whether the force the Officers used against him during and after his arrest was excessive and objectively unreasonable.

For example, the City and the Officers admit that on December 21, 2008, the Officers arrested Mr. Yessin on two charges of violating Fla. Stat. § 843.02, which prohibits "resisting or opposing an officer without violence". (Dkt. 2 ¶26; Dkt. ¶26; Dkt. 24 ¶26.) The Officers and the City also admit the authenticity of the court orders that resolved these charges, which were attached as Exhibits B and C to Mr. Yessin's complaint. (Dkt. 2 ¶27; Dkt. 6 ¶27; Dkt. 24 ¶27.) The County Court of the Thirteenth Judicial Circuit dismissed the charges against Mr. Yessin. The County Court found that the undisputed material facts showed the State could not establish a prima facie case of guilt against Mr. Yessin. Fla R. Crim. P. 3.190(c)(4). Specifically, the Court held that legal duty is an essential element to establish a violation of Fla. Stat. § 843.02 and the Tampa Police Department officers were not in the execution of a legal duty at the time of the complained of conduct by Mr. Yessin. (Dkt. 2 ¶27, Exhibit B; Dkt. 6 ¶27; Dkt. 24 ¶27.) The Court also held that at the time of Mr. Yessin's arrest,

Florida law was "abundantly clear" that Mr. Yessin's undisputed use of "mere words" was "insufficient to constitute obstruction" as a matter of law. (Dkt. 2 ¶27, Exhibit B, P. 14.)

Honorable Ronald Ficarrotta, sitting in his appellate capacity as a Circuit Court Judge in the Thirteenth Judicial Circuit of Hillsborough County, affirmed the County Court's dismissal of the Officers' charges against Mr. Yessin for obstruction. (Dkt. 2 ¶27, Exhibit C; Dkt. 6 ¶27; Dkt. 24 ¶27.) Judge Ficarrotta's decision reiterates that well-established Florida law holds that a "person must do more than merely irritate, annoy or distract [an] officer" in order to be charged with obstruction. (Dkt. 2 ¶27, Exhibit C, P. 4.)

The Officers and the City have also admitted other important facts that led to the dismissal of the charges against Mr. Yessin and demonstrate that he was arrested without arguable probable cause. While the Officers responded to an alleged physical altercation involving two women at SideBern's Restaurant, when they arrived at the restaurant they observed no physical altercation, only arguing. (Dkt. 2 ¶8, 9; Dkt. 6 ¶8, 9; Dkt. 24 ¶8, 9.) After briefly speaking with the management of SideBern's, the Officers escorted the two women, Ms. Dias and Ms. Jacolow, outside of the restaurant and to the adjacent parking lot to obtain their separate accounts of what occurred. (Dkt. 2 ¶12; Dkt. 6 ¶12; Dkt. 24 ¶12.) Officer Newberry interviewed Ms. Dias first and then Ms. Jacolow. During Officer Newberry's interview with Ms. Jacolow, he allowed her the opportunity to speak with Mr. Yessin. (Dkt. 3 ¶13; Dkt. 6 ¶13; Dkt. 24 ¶13.) The City and the Officers have specifically admitted that at no time was there any reason to believe that Mr. Yessin had anything to do with the alleged physical altercation the Officers were investigating. (Dkt. 2 ¶10; Dkt. 6 ¶10; Dkt. 24 ¶10.)

The sole basis the Officers and the City have provided for the criminal charges against Mr. Yessin is that he somehow interfered with Officer Newberry's interview of Jodi Jacolow, one of the possible participants in the physical altercation. (Dkt. 2 ¶27, Exhibit B, P.3.) But all defendants admit

4

that *before* he was arrested, Mr. Yessin had terminated his conversation with Ms. Jacolow and stepped away from the immediate area of Officer Newberry's interview with her. (Dkt. 2 ¶16; Dkt. 6 ¶16; Dkt. 24 ¶16.) They have also acknowledged that at all times during Officer Newberry's interviews of the two women, the entire situation was under control. (Dkt. 2 ¶14; Dkt. 6 ¶14; Dkt. 24 ¶14.) And at no time before his arrest did Mr. Yessin physically touch or threaten Officer Newberry or any of the Officers. (Dkt. 2 ¶24; Dkt. 6 ¶24; Dkt. 24 ¶24; Dkt. 53 at 42.) Finally, the Officers and the City have conceded that Officer Newberry and the other Officers were not in fear for their safety or the safety of others when they decided to arrest Mr. Yessin. (*Id.;* Dkt. 53 at 42.)

Officer Michael Leavy executed the Criminal Report Affidavit that resulted in criminal charges against Mr. Yessin. (Dkt. 2 ¶26; Dkt. 6 ¶26; Dkt. 24 ¶26.) In short, all parties agree that at the time of his arrest on charges of interfering and obstructing an officer in his lawful duties, Mr. Yessin was simply a bystander to a police investigation that was under complete control, whose presence posed no threat to the officers' safety, who had terminated all conversations with Officer Newberry (the officer he was alleged to have interfered with), and who had moved away from the immediate area of the interview at the request of Officer Newberry. These facts support Mr. Yessin's claims and provide evidence from which a jury could reasonably find the Officers violated Mr. Yessin's Fourth Amendment rights and that no reasonably careful police officer could have believed he had arguable probable cause to arrest Mr. Yessin and deprive him of his liberty for these unfounded criminal charges. The Officers' and the City's above referenced admissions alone preclude summary judgment in their favor. That said, other disputed facts are discussed below as they are relevant to the specific arguments made by the Officers in their Motion for Summary Judgment. (Dkt. 70).

## PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983

### A.     The Defendant Officers Lacked Arguable Probable Cause to Arrest The Plaintiff for Obstruction, Fla. Stat. § 843.02

"Probable cause to arrests exits 'when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Perez, 917 F.Supp.2d at 1267 (citing McCormick v. City of Ft. Lauderdale, 333 F.3d 1234, 1243 (11th Cir.2003)). "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir.2004)). "In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiff." Green v. Miceli, 09-CV-60965, 2010 WL 1249130, at *5 (S.D. Fla. 2010) (quoting Davis, 451 F.3d at 762).

"To determine whether arguable probable cause exists, courts must look to the totality of the circumstances." Davis, 451 F.3d at 763. "[A]t the summary judgment stage, the Court must view the totality of the circumstances in the light most favorable to Plaintiff, the nonmoving party." Green, 2010 WL 1249130, at *5 (citing Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir.2002); Evans v. Stephens, 407 F.3d 1272, 1277 (11th Cir.2005)). "Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime." Skop, supra, 485 F.3d at 1137 (citing Crosby v. Monroe County, 394 F.3d 1328, 1333

6

(11th Cir.2004)). Thus, "[w]hether there was arguable probable cause to arrest [Mr. Yessin] depends upon what amounts to probable cause under Florida law for obstruction of justice []." Davis, 451 F.3d at 764.

Obstruction of justice in Florida is codified by Fla. Stat. § 843.02, which provides as follows, in relevant part:

> Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . .

Thus, to establish probable cause under 843.02, the state must show: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." Jay v. State, 731 So. 2d 774, 775 (Fla. 4th DCA 1999). Both elements must be established in order to support a conviction under 843.02.

### 1. The Defendant Officers were not engaged in the lawful execution of a legal duty at the time of Plaintiff's arrest

With respect to the first element, lawful execution of a legal duty, "[i]t is important to distinguish between a police officer 'in the lawful execution of any legal duty' and a police officer who is merely on the job." Id. (quoting D.G. v. State, 661 So.2d 75, 76 (Fla. 2d DCA 1995). "The case law provides that 'legal duties' include (1) serving process; (2) legally detaining a person; or (3) asking for assistance in an emergency situation, or (4) impeding officers' undercover activities by acting as a 'lookout' during the commission of a criminal act." C.W. v. State, 76 So. 3d 1093, 1095 (Fla. 3d DCA 2011) (citing Davis v. State, 973 So.2d 1277 (Fla. 2d DCA 2008); Jay, supra, 731 So.2d at 775; Porter v. State, 582 So.2d 41, 42 (Fla. 4th DCA 1991).

"Merely being on the job, however, is not a 'legal duty' as that term is contemplated within section 843.02, Florida Statutes." Green, 2010 WL 1249130, at *6. "An officer is performing a

legal duty under Florida's obstruction statute only if criminal activity is actually taking place." Id. See also Jay v. State, 731 So.2d 774, 776 (Fla. 4th DCA 1999) (holding arrest of plaintiff under section 843.02 for telling suspected prostitutes "don't get in the car, he's a cop" during police sting operation was unlawful because "there was no criminal activity occurring at the time" of the alleged obstruction; therefore, the officer was "merely on the job and not engaged in the lawful execution of any legal duty"); Hayden v. Broward County, 12-62278-CIV, 2013 WL 4786486, at *12 (S.D. Fla. 2013) (officers involved in undercover operation were "merely on the job" rather than in the process of executing a legal duty where there was no suggestion "that the officers were observing actual criminal activity, were about to make arrests, or were engaged in a 'sting' of some sort during the time Plaintiff approached and remained in the area"); In Interest of J.B., 621 So. 2d 489, 491 (Fla. 4th DCA 1993) (although officer's investigation of a 911 call constitutes an execution of a legal duty, officer's legal duty ends when "the investigating officer is reasonably satisfied that no emergency exists").

## Record Evidence

It is undisputed that when the Defendant Officers arrived at SideBern's restaurant they observed no physical altercation—only arguing. (Dkt. 2 ¶8, 9; Dkt. 24 ¶8, 9). It is undisputed that the Defendant Officers never had any reason to believe that Mr. Yessin had anything to do with the alleged physical altercation at SideBern's. (Dkt. 2 ¶10; Dkt. 24 ¶10). It is further undisputed that at the time Officer Newberry was interviewing Ms. Jacolow, the entire situation at SideBern's was under control. (Dkt. 2 ¶14; Dkt. 24 ¶14). Furthermore, during the entire interview, Officer Newberry had not decided whether to arrest anyone at the scene and was not in the process of effectuating an arrest of Ms. Jacolow. (Dkt. 53 P. 23). Because it is undisputed that no criminal activity was actually taking place at the time of the alleged obstruction by Plaintiff, nor did the

Defendants believe criminal activity was taking place, the Defendant Officers were not engaged in the lawful execution of a legal duty, and the first element of the crime therefore fails.

### 2. Plaintiff's verbal conduct alone was insufficient to constitute Obstruction under § 843.02

Even if the Defendant Officers had been engaged in the lawful execution of a legal duty at the time Plaintiff was arrested – which they were not – that element alone would not be sufficient to establish arguable probable cause for the arrest of Mr. Yessin for obstruction. Florida law is well settled that, "with limited exceptions, physical conduct must accompany offensive words to support a conviction under [Fla. Stat. § 843.02]." Francis v. State, 736 So. 2d 97, 99 (Fla. 4th DCA 1999) (citing State v. Dennis, 684 So.2d 848, 849 (Fla. 3d DCA 1996); D.G. v. State, 661 So.2d 75, 76 (Fla. 2d DCA 1995); Wilkerson v. State, 556 So.2d 453, 456 (Fla. 1st DCA 1990), rev. den., 564 So.2d 1088 (Fla.1990)). See also W.W. v. State, 993 So. 2d 1182, 1185 (Fla. 4th DCA 2008).

In 2006, approximately two (2) years prior to the Plaintiff's arrest by the Defendant Officers, the Second District in D.A.W. v. State, 945 So. 2d 624 (Fla. 2d DCA 2006) thoroughly reviewed the "legal duty" element of obstruction, analyzing numerous 843.02 cases throughout the state. As the court in D.A.W. explained in the written opinion, Florida courts have recognized a distinction when the defendant is not the individual subject to the execution of the legal duty by the officer. "[W]hen the officer is not executing process on *that* person, legally detaining 'that person,' or has not asked that person for assistance in an ongoing emergency, then 'that person's' actions must normally be physically obstructive, not merely verbally harassing, in order to support a conviction for obstructing an officer without violence." Id. The person "must do more than merely irritate, annoy, or distract the officer to constitute a crime." Id. at 627. (emphasis added).

9

In other words, "obstructive conduct rather than offensive words are normally required to support a conviction under this statute." D.G. v. State, 661 So.2d 75, 76 (Fla. 2d DCA 1995).

"[A]n objective officer does not have arguable probable cause to arrest a suspect for obstruction without some physical act that interferes with or obstructs the officer's actions." Ruizdelatorre v. City of Miami Beach, 06-21183-CIV, 2008 WL 5381431, at *9-10 (S.D. Fla. 2008) (citing Davis, 451 F.3d at 765-66); See also Petithomme v. Cnty. of Miami–Dade, 511 F. App'x 966, 971–72 (11th Cir.2013) ("verbal interruptions and simple inquiries as to an officer's purpose cannot be construed as obstruction under Florida law").

Record Evidence

The testimony of every officer involved confirms that the arrest of Mr. Yessin was made for a mere verbal interruption, and therefore without arguable probable cause under well-established case law

**Officer Leavy**: Testified that he arrested Mr. Yessin solely because Mr. Yessin "interfered" with Officer Newberry's interview of Ms. Jacalow. (Dkt. 59 P. 121-127.). Officer Leavy admitted that Mr. Yessin's conduct involved mere words—words Officer Leavy wasn't even able to discern. (Dkt. 59 P. 99). Officer Leavy acknowledged that Mr. Yessin did not physically obstruct Officer Newberry in any way. (*Id.* at 100.). And he admitted Mr. Yessin made no verbal threats and made no overt physical acts that could have threatened any of the police officers at the scene of the investigation. (*Id.* at 102-103.). Nevertheless, Officer Leavy felt entitled to instruct Mr. Yessin twice to "leave." (Dkt. 59 at 108.).

**Officer Newberry:** Testified that he told Mr. Yessin to "back off"; he did not specifically tell Mr. Yessin to leave the SideBern's property completely, nor did he tell Mr. Yessin how far away he needed to back away. (Dkt. 53 P. 38-39.). At this time the situation in the parking lot was under

control. (*Id.*). He had distanced himself from the interview and turned his back so that Officer Newberry was able to continue his investigation without interruption. (*Id.* P. 36-42.) Because Officer Newbery was able to continue his investigation, he had no intention of arresting Mr. Yessin. (*Id.*) Indeed, Officer Newberry described Mr. Yessin's initial verbal interruption as "just irritating." (*Id.* at 43).

**Officer Kennedy:** According to Officer Kennedy, this general crime scene investigation did not come within the definition of a "legal duty" within the meaning of section 843.02. (Dkt. 58 P. 34.). He admits that Mr. Yessin did not engage in behavior that was verbally or physically threatening before Officer Leavy went hands on to effectuate Mr. Yessin's arrest. (*Id.* P. 52-57.).

**Officer Reese:** Admits that Officer Leavy provided Mr. Yessin no specifics in connection with his instruction to "leave." (*Id.* at 117.) He specifically recalls that Mr. Yessin was not facing Officer Newberry and was not in the immediate area of Officer Newberry when Officer Leavy gave second order to "leave." (*Id.* at 119.) Furthermore, he does not recall a specific verbal comment by Mr. Yessin after Officer Leavy gave the second command to "leave". (*Id.* at 122.). Officer Reese confirms that Mr. Yessin's conduct was purely verbal by describing his behavior as "boisterous". (Dkt. 54 P. 71-72, 130-133.)

**Officer Murphy:** Officer Murphy was within twenty feet of the interaction between Mr. Yessin and Officer Newberry, but Officer Murphy did not have a reasonable suspicion that Mr. Yessin committed a crime at the time Officer Leavy approached Mr. Yessin and told him to leave the area. (Dkt. 60 P. 15-20.). He did not see Mr. Yessin do anything to impede or obstruct Officer Newbery in his interview of Ms. Jacolow and he did not see Mr. Yessin make any movement to threaten Officer Leavy as Officer Leavy approached Mr. Yessin. (*Id.* P. 24-26.). Inexplicably, he concedes that at the time he chose to participate in Mr. Yessin's arrest and he did not have sufficient information to form

11

an opinion that Mr. Yessin committed a crime. (*Id.* at 32.)Officer Murphy attempts to shift his responsibility for using force to restrain Mr. Yessin by asserting the arrest decision was made by Officer Leavy. (Dkt. 60 at 40.)

**Mr. Yessin:** Testified he did not attempt to speak with Aimee Dias. (Dkt. 90 at 89.) He only approached the interview of his colleague, Ms. Jacolow, and told the officer that "if she needs counsel, I can do it". (*Id.*) He intended to keep an eye on the situation, in part due to the aggressive and combative behavior of Officer Reese. (*Id.* P. 145-146.). Mr. Yessin testified that when Officer Newberry asked him to back away, he backed up and turned his back to the interview. (Dkt. 90 at 89.) He moved a considerable distance away from the interview to include the distance of two car parking spaces plus the distance that consisted of the brick pavers in front of the Side Bern's entrance. (Dkt. 90 P. 93-94.) (See Exhibit A, Affidavit of Jodi Jacolow.). The distance was far enough that Mr. Yessin could not even hear the statements made by Officer Newberry after he moved away. (Dkt. 90 P. 94-152.) (Dkt. 91 at 252.). After his initial statement to Officer Newberry, the only other statements he made to any officer was to alert them that he was waiting on his car and asked the officers for identification of the lead investigator (Officer Newberry). (Dkt. 90 P. 129-130, 135.) Upon asking for Officer Newberry's identification, Mr. Yessin was hit from behind and his face was "smashed" into the pavement. (*Id.*)

**Jodi Jacolow:** Testified that Mr. Yessin had backed up enough that she couldn't hear what Mr. Yessin said when Officer Leavy approached him. (*Id.*) A photograph attached to Ms. Jacolow's Affidavit demonstrates that Mr. Yessin had repositioned himself far from the immediate area of her interview with Officer Newbery (*Id.*) She testified that Mr. Yessin's conduct was not disrupting her interview with Officer Newberry when Officer Leavy confronted Mr. Yessin. (*Id.*)

12

### 3. The law prohibiting arrest for obstruction based on mere verbal conduct was well-established by 11th Circuit precedent before Mr. Yessin's arrest

In its Motion for Summary Judgment (Dkt. 70), Defendants contend that Plaintiff's Fourth Amendment claim for unlawful arrest will fail because the Defendants had probable cause to make the arrest, and even if, arguendo, the court finds they did not, they are still protected by qualified immunity because the conduct doesn't violate clearly established law. To prove that the law was "clearly established," a plaintiff may point to either

> (1) earlier case law from the Supreme Court, [the Eleventh Circuit], or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct.

Long v. Slaton, 508 F.3d 576, 584 (11th Cir.2007)

The very conduct Plaintiff is suing the Defendant Officers for is fundamental. "At the time of Plaintiff's arrest, it was 'clearly established that an arrest made without probable cause violates the Fourth Amendment.'" Gonzalez-Torres v. Buswell, 8:11-CV-2553-T-27TGW, 2014 WL 1272754, at *10 (M.D. Fla. 2014) (quoting Redd v. City of Enterprise, 140 F.3d 1378, 1382 (11th Cir.1998)). An arrest without probable cause may also violate the First Amendment under certain conditions. Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir.2002). (affirming summary judgment on retaliatory arrest claim in violation of plaintiff's First Amendment rights and stating that "[w]hatever the officers' motivation, however, the existence of probable cause … defeats her … claim");

The following Eleventh Circuit decisions, most of which were decided before Plaintiff's arrest, emphasize these rules consistently. In Skop v. City of Atlanta, GA, the Eleventh Circuit again rejected the premise that mere verbal interaction with a law enforcement officer is sufficient

to provide a basis for arrest, holding that such a premise "collides head-on with the First Amendment, which 'protects a significant amount of verbal criticism and challenge directed at police officers .... The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.'" Skop v. City of Atlanta, GA, 485 F.3d 1130, 1139 (11th Cir. 2007) (quoting Houston v. Hill, 482 U.S. 451, 461–63, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)).

In 2006, the Eleventh Circuit in Davis v. Williams reversed a district court's award of summary judgment on qualified immunity in an action with materially similar facts to this action. There, the Plaintiff brought suit under 42 U.S.C. § 1983 against the arresting deputy and the county sheriff, alleging that he was falsely arrested for obstruction under Fla. Stat. § 843.02, and that the force used was excessive in violation of his Fourth Amendment rights. Davis, 451 F.3d at 761.

On the evening of the plaintiff's arrest, the plaintiff was hosting a party for his family, and saw two deputies conducting a traffic stop in his driveway. Id. He approached the deputies with his hands in the air, and asked what was wrong. The deputy ordered him to leave. Id. He then noticed the police car was obstructing the driveway, so he asked Deputy Becht if he could direct his guests around the car, for safety. Id. "Becht's response was: 'Leave now or I'll arrest you.'" Id. The plaintiff asked why, and was again told to leave. He started back, but turned and asked to speak to Deputy Becht's supervisor. Id. At the same time, one of his guests asked Deputy Becht for his badge number. Id. Deputy Becht responded by again threatening plaintiff with arrest. Id. At this point, the plaintiff stopped talking and turned back towards home. Id. Inexplicably, Deputy Becht and his partner, Deputy Bright, each grabbed the plaintiff from behind, forcibly bent his arms behind his back, and handcuffed him. Id. He was thrown to the ground, then shoved into the K-9 unit for transport. He sustained a torn rotator cuff when he was taken to the ground. Id.

The plaintiff sued for false arrest under the Fourth Amendment. The court explained that "[w]hether there was arguable probable cause to arrest [the plaintiff] depends upon what amounts to probable cause under Florida law for obstruction of justice [Fla. Stat. § 843.02] and disorderly conduct [Fla. Stat. § 877.03]." Id.  With respect to the second element of § 843.02, the court recognized the longstanding body of Florida decisional authority holding that "physical conduct must accompany offensive words to support a conviction under § 843.02." Id. at 765 (citing Francis, Dennis, D.G., Wilkerson, H.A.P., J.D.G).  The court held that "[t]he facts in this case, viewed in the light most favorable to [the plaintiff] under the law, cannot support a finding of even arguable probable cause for either obstruction of justice or disorderly conduct." Id. at 766.

The Davis case was decided by the Eleventh Circuit in 2006. The opinion is thorough in its description of the arrestee's dialogue, mannerisms, and interaction. The evidence in Davis, much like in this case, reflected that the plaintiff "did not physically interfere with or obstruct the deputies." Id. The plaintiff "never made physical or verbal threats towards Becht, never sought to incite violence, and never told the deputies to get off his property." Id. The plaintiff "approached the deputies with his hands in the air in a respectful manner and did not yell, but rather was 'talking.'" Id. The plaintiff "only approached the deputies initially because he was concerned that they might be there to tell him his children, who had not yet arrived, might have been injured." Id. However, just like in this case, "it was only after [arrestee] asked to speak to Becht's supervisor and while he was walking away, that Becht and Bright grabbed him and pulled him back into the situation." Id. Furthermore, the arrestee's guest "ask[ed] for Becht's badge number moments before Davis was arrested." Id. Finally, the court pointed out that deputy Becht's partner, "Deputy Bright, the only other deputy on the scene, specifically testified that he never considered Davis a threat to

himself or to Becht, that Davis did not make 'any threatening remarks,' and that Davis was arrested only because he yelled." Id.

In addition to the above cited decisions from the Eleventh Circuit and other courts, note that in 1987, the U.S. Supreme Court in City of Houston v. Hill took substantially the same position:

> Conduct involving only verbal challenge of an officer's authority or criticism of his actions ... operates, of course, to impair the working efficiency of government agents ... Yet the countervailing danger that would lie in the stifling of all individual power to resist—the danger of an omnipotent, unquestionable officialdom—demands some sacrifice of efficiency.

City of Houston v. Hill, 482 U.S. 451, 464 n.12, 107 S.Ct. 2502, 2510 n.12, 96 L.Ed.2d 398 (1987).

The material, undisputed facts of this case compel a denial of the Defendants' motion for summary judgment. By way of the Supreme Court and Eleventh Circuit cases cited above, it was clearly established in 2006 that a citizen cannot be "precluded by the threat of arrest from asking to speak to an officer's superior or from asking for an officer's badge number." Davis, 451 F.3d at 767. Considering that the U.S. Supreme Court in Hill, and the Eleventh Circuit in Davis, Skop, and others, recognized this position for years before the Plaintiff's arrest, the law was clearly established and this Court should deny qualified immunity. "The right to be free from arrest without probable cause is a clearly established right." Siler v. Floyd, 2010 WL 5173204, at *4 (N.D. Fla. 2010).

### B.     The Defendant Officers Used Excessive Force When Arresting Plaintiff

"Excessive force claims in the context of an arrest are analyzed under the Fourth Amendment's 'objective reasonableness' standard, which balances the severity of the force used by an officer against the need for the use of force." Brown v. Sheriff of Orange County, Fla., 6:12-CV-1299-ORL-37, 2014 WL 2722350, *4 (M.D. Fla. 2014) (citing Graham v. Connor, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The need for force is determined based

16

on the totality of the circumstances presented to the officer, with particular attention paid to three factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Graham, 490 U.S. at 396, 109 S.Ct. at 1872). Additionally, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. (quoting Graham, 490 U.S. at 396, 109 S.Ct. at 1872).

Given the fact that Mr. Yessin had committed no crime, and given that the Defendant Officers concede that he posed no threat, the level of force used by the Defendant Officers to arrest and detain Mr. Yessin was clearly excessive. He was unexpectedly "slammed" to the ground after asking for the identity of Officer Newberry. (Dkt. 90 at 130.) (Dkt. 91 at 203-204.) Mr. Yessin was surprised as his left arm was grabbed from the rear and he was simultaneously struck in the back of his head. (Dkt. 90 P. 94.) (Dkt. 90 P. 172-173.) . Mr. Yessin was also kicked behind the knee. (*Id.* at 119.) Mr. Yessin described the strike to his head as a "hard" hit. (Dkt. 90 at 118.) He was hit in the back and leg whipped. (*Id.*) He was spun around, struck with a knee and leg whipped. (Dkt. 90 at 79.) He describes a boot grinding his face into the pavement after he was forced to the ground. (*Id.*) Force applied to his neck and shoulders continued to grind his face into the asphalt, even after he was handcuffed. (See Exhibit B, Affidavit of Brent Yessin.). After he was cuffed, the officers propelled him by use of force across the parking lot to cause additional pain and three (3) officers tried to "throw me in the back of the police car". (*Id.* P. 108-109.) The force used against him was so excessive, Mr. Yessin describes the force as "beating up on me to punish me for having had the temerity to take out my pen and write this guy's name down". (*Id.* at 118.) As the three (3) officers attempted to throw

17

Mr. Yessin in the rear of the police cruiser; he felt something against his neck and heard a voice state, "I am going to tase you". (*Id*. at 121-122.)

As he was taken to the ground, Mr. Yessin also believes he was struck by elbows as he was going down. (Dkt. 91 P. 232.) The initial blow to the back of his head could have been from a forearm, but, the blow felt more like a punch. (Dkt. 91 at 230.) Mr. Yessin describes multiple punches, kicks, knee blasts, elbow blasts and being slammed helplessly to the asphalt. (*Id*. at 229.) He viewed this attack as punishment for exercising the right of free speech in requesting the lead investigator's name. Mr. Yessin's view of the force used against him as a punitive beating is supported by the statement he overheard by one of the officers, prior to his arrest that, "the guy deserves to be dropped on his head". (Dkt. 91 at 233.) Mr. Yessin now has a permanent scar on his chin. (Dkt. 90 at 79).

In their Motion for Summary Judgment (Dkt. 70), the Defendant Officers contend that Plaintiff cannot support an excessive force claim under the Fourth Amendment because Mr. Yessin sustained only one minor scar; thus, the force used in making the arrest must have been de minimis. The Defendants are incorrect. "To conclude ... that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim improperly bypasses [the] core [judicial] inquiry,' which is the nature of the force." Saunders v. Duke, 766 F.3d 1262, 1270 (11th Cir. 2014).

Defendants also suggest that because Plaintiff can't distinguish among the blows to the back of his body those claims should be disregarded and the Defendant Officers are entitled to qualified immunity. On the contrary, the Eleventh Circuit has "expressly rejected the argument that 'the force administered by each defendant in [a] collective beating must be analyzed separately to determine which of the defendants' blows, if any, used excessive force.'" Velazquez v. City of Hialeah, 484 F.3d 1340 (11th Cir.2007) (quoting Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir.2002)).

Furthermore, "[b]ecause an officer who fails to intervene is just as liable as the officer who delivers the excessive blow, it is sufficient for the Plaintiff to allege that all of the officers were present during the beating, and that at least one officer used excessive force." Id.

1. **Well-established law prohibited the excessive force the Officers used against Mr. Yessin**

"[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." Tolan v. Cotton, 134 S. Ct. 1861, 1865-66, 188 L.Ed.2d 895 (2014) (quoting Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The law was clearly established in 2008 that the use of any force in conducting an arrest is a violation of the Fourth Amendment if the arrest is unlawful. See Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir.2008) ("[E]ven de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect...."); Bashir v. Rockdale County, Georgia, 445 F.3d 1323, 1332 (11th Cir.2006)). See also Thompson v. Douds, 852 So. 2d 299, 306 (Fla. 2d DCA 2003) (fact that arrestee he had committed no crime "militates against the use of any force"). Moreover, where the unlawfulness of conduct is apparent, no citation to the law is necessary. Considering the objective reasonableness balancing test, the level of force used by the Defendant Officers far outweighs the balancing factors, such that no reasonable law enforcement officer would consider it to be lawful. Accordingly, Plaintiff submits that the Defendant Officers are not entitled to qualified immunity for their use of excessive force in violation of Plaintiff's Fourth Amendment rights.

**CONCLUSION**

For the foregoing reasons, Plaintiff BRENT YESSIN respectfully requests that this Honorable Court deny the Defendant Officers' Motion for Summary Judgment (Dkt. 70), and for such other and further relief as this Court deems proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 12, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filings to: Ursula D. Richardson, Assistant City Attorney, 315 E. Kennedy Boulevard, 5th Floor, Tampa, Florida 33602, (Ursula.Richadrsonattampagov.net; Imelda.higginsattampagov.net) and John A. Makholm, Esq., 1120 Pinellas Bayway South, Suite 202, Tierra Verde, Florida 33715, (johnmakholmatgmail.com; mlgfirmattampabay.rr.com).

> */s/ David P. Mitchell*
> Keith M. Carter, Esquire
> Florida Bar no.: 500364
> David P. Mitchell, Esquire
> Florida Bar no.: 067249
> Morgan & Morgan, P.A.
> One Tampa City Center
> 201 N. Franklin Street, 7th Floor
> Tampa, FL  33602
> kmcpleadingsatforthepeople.com
> jcurryatforthepeople.com
> pwbrownatforthepeople.com
> dmitchellatforthepeople.com