UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRENT YESSIN,

       Plaintiff,

v.                      Case No. 8:13-cv-1252-T-33EAJ

THE CITY OF TAMPA, FLORIDA, a
municipal corporation, ET AL.,

       Defendants.

_____/

## ORDER

This matter comes before the Court pursuant to Defendant City of Tampa's Motion for Summary Judgment (Doc. # 52), filed on September 15, 2014, and Defendant Officers – Corporal Michael Leavy, Corporal Joseph Reese, Officer Dustin Kennedy, and Master Police Officer Shannon Murphy's ("Defendant Officers") – Dispositive Motion for Summary Judgment (Doc. # 70), filed on September 29, 2014. For the reasons that follow, the Court grants City of Tampa's Motion and grants in part Defendant Officers' Motion.

## I.   Background

On December 20, 2008, an altercation occurred in the women's restroom of SideBern's restaurant located in Tampa, Florida. (Doc. ## 70-1; 70-2; 70-3; 70-4; 71 at 2; 92 at 3-4). This altercation involved Aimee Dias, Jodi Jacolow, and George Hochschwender. (Doc # 71 at 3). In response, SideBern's

management contacted the Tampa Police Department. (Doc. # 81 at 2).

When Defendant Officers arrived, Officer Newberry – an unnamed party to this action – assumed the role as "lead investigator." (Doc. ## 70-1; 70-2; 70-3; 70-4; 79 at 5-6). Inside SideBern's, Officers Reese and Newberry spoke to SideBern's Manager Dean Hurst. (Doc. # 81 at 6). Plaintiff Brent Yessin interrupted the conversation with Hurst, inquired about the altercation, and indicated that he was "an attorney," and "would take care of the people [who] were involved." (Doc. ## 75 at 7; 81 at 4; 92 at 32). Once it was determined that Yessin was not an involved party, Newberry instructed Yessin to "back off" and not to involve himself in the investigation. (Doc. ## 79 at 8, 15; 100 at 5).

The altercation participants were then removed from SideBern's, and Newberry began to interview each of them in the adjoining SideBern's parking lot. (Doc. # 79 at 9). Newberry first interviewed Dias. (Doc. ## 71 at 3-4; 85 at 11). After interviewing Dias, Newberry placed her in handcuffs. (Doc. # 70-4 at 3-4).

Next, Newberry interviewed Jacolow. (Doc. # 88 at 6). As Newberry was interviewing Jacolow, Yessin approached, indicating that he could provide legal services to Jacolow.

(Doc. ## 79 at 28; 92 at 9). At that time, Newberry stopped his interview and asked Jacolow whether Yessin was her attorney, and she said "No." (Doc. ## 79 at 28; 88 at 3; 92 at 9; 101 at 5). As a result, Newberry warned Yessin that, as "he was not involved" in the altercation and neither suspect sought him as legal counsel, "he needed to back up and quit interfering in [his] investigation." (Doc. # 79 at 29). Newberry gave Yessin another warning, and stated that "[y]ou are going to be defending yourself sir, do you understand that? . . . [y]ou are interfering with my investigation, you need to back off." (Doc. # 70-2 at 4). Yessin concedes that he was told several times to "back off" and to not interfere. (Doc. ## 90 at 152-53). However, Yessin contends that he was compliant with Newberry's requests, and each time he was instructed to "back off" he stepped away. (Id.).

Shortly after Newberry's final instruction to Yessin, Officer Leavy approached (Doc. # 53 at 31), and gave Yessin additional orders to leave the area (Doc. # 94 at 105-07). Yessin submits that he complied. (Doc. # 90 at 152-52). According to Leavy, however, Yessin would not leave the area, so Leavy told Yessin "[y]ou're not her lawyer, [w]e've let you offer your legal services . . . [y]ou need to leave, you're not leaving, you're under arrest." (Doc. # 94 at 107-

3

8). Within moments, Yessin was arrested. (Doc. # 70-2 at 4).
There is a dispute amongst the parties as to the amount of
force used to effectuate Yessin's arrest. During his arrest,
Yessin sustained an injury to his chin, (Doc. ## 90 at 79,
92; 106), which is the only permanent physical injury Yessin
suffered. As a result, Defendant Officers summoned medical
assistance. (Doc. # 106).

Yessin was charged with two counts of Obstructing or
Opposing an Officer without Violence, in violation of Fla.
Stat. § 843.02. (Doc. # 70-2). Dias and Jacolow signed waivers
of prosecution attesting that they did not want to file
criminal charges against each other as a result of the
altercation, and they were released by Defendant Officers.
(Doc. ## 75 at 12; 99).

On December 22, 2008, Yessin provided a statement to the
Tampa Police Department for the actions taken by Defendant
Officers. (Doc. # 90 at 8). Thus, an Internal Affairs
investigation was conducted into the events that occurred at
SideBern's. (Doc. # 52-8). On June 26, 2009, the internal
investigation was resolved with a finding that the
allegations against Leavy, Reese, and Kennedy were
"UNFOUNDED: EXONERATED" and "UNFOUNDED: NOT INVOLVED" as they
related to Murphy. (Id.).

4

Thereafter, Yessin filed a Motion to Dismiss his criminal charges, which Hillsborough County Judge John N. Conrad granted. (See Doc. # 2-2). The State appealed Judge Conrad's decision, and Circuit Judge Ronald Ficarrotta affirmed the decision. (See Doc. # 2-3). Subsequently, Yessin initiated this action on December 19, 2012, in state court, setting forth claims for False Arrest and Excessive Force against Defendant Officers (Counts I – IV) and a 42 U.S.C. § 1983 claim against City of Tampa (Count V). (See Doc. # 2). On May 10, 2013, City of Tampa removed this action on the basis of federal question jurisdiction. (Doc. # 1).

Then, City of Tampa filed its Motion for Summary Judgment (Doc. # 52) on September 15, 2014, and Defendant Officers filed their Motion for Summary Judgment (Doc. # 70) on September 29, 2014. On February 12, 2015, this Court held oral argument on the pending Motions for Summary Judgment. (Doc. # 162). At this time, the Motions are ripe for this Court's review.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to

defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

## III. **Analysis**

### A. **Defendant Officers' Motion for Summary Judgment**

Yessin contends that Defendant Officers' actions constituted (1) an unreasonable seizure of Yessin under the Fourth and Fourteenth Amendments, (2) a deprivation of life and liberty without due process of law under the Fifth and Fourteenth Amendments, and (3) a violation of Yessin's right

7

to freely associate with others under the First and Fourteenth Amendments. (See Doc. # 2). The Court will address each contention in turn.

### i. Fifth Amendment

According to Defendant Officers, the Fifth Amendment is not applicable to this action as the Fifth Amendment "only restrains the federal government (and by reference, its employees) from denying an individual due process of law." (Doc. # 70 at 9)(citing Buxton v. City of Plant City, Fla., 871 F.2d 1037, 1041 (11th Cir. 1989)). This Court agrees.

The Complaint is devoid of any allegation of federal government involvement, and Yessin fails to assert any claims against a federal government actor. Furthermore, Yessin fails to explain how the Fifth Amendment is material to the facts surrounding this action. Accordingly, Defendant Officers' Motion is granted on this ground.

### ii. Fourteenth Amendment

Defendant Officers suggest that the Fourteenth Amendment is also inapplicable as courts have previously held that "when a person is *seized* in violation of the [Fourth] Amendment, any use of force should be evaluated under the [Fourth] Amendment's *objective reasonableness standard* and not under

*substantive due process*." (Doc. # 70 at 9)(emphasis in original).

Upon review of the Complaint, the Court finds that Yessin's False Arrest and Excessive Force claims are better addressed by way of a Fourth Amendment analysis, and not under the Fourteenth Amendment. See Graham v. Connor, 490 U.S. 386, 394-95 (1989)(holding that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a "substantive due process" approach."); Battle v. City of Florala, 28 F. Supp. 2d 1331, 1337 (M.D. Ala. 1998)("When a Plaintiff is actually 'seized' within the context of the Fourth Amendment, his claim of excessive force must be reviewed under the Fourth Amendment's objective reasonableness standard.").

Furthermore, Yessin's claim that his Fourteenth Amendment rights were violated by Defendant Officers is a mere conclusory assertion, without supporting facts or legal citations. To date, Yessin has failed to plead with any specificity exactly how any due process violation occurred as

a result of his arrest. Thus, Defendant Officers' Motion is granted on this claim.

### iii. **First Amendment**

In addition, Defendant Officers seek dismissal of Yessin's First Amendment claim. (Doc. # 70 at 10). As correctly stated by Defendant Officers, in the context of an arrest, the existence of probable cause defeats a First Amendment claim. (Id. at 10-11); see Dahl v. Holley, 312 F.3d 1228, 1236 (11th Cir. 2002)("Whatever the officer['s] motivation [to arrest the plaintiff] . . . the existence of probable cause to arrest [the plaintiff] defeats [his] First Amendment claim."). Here, Defendant Officers contend that probable cause did exist for the arrest of Yessin, or in the alternative, at least, arguable probable cause existed based on the facts and law known to Defendant Officers at the time of Yessin's arrest. (Doc. # 70 at 10-11). Therefore, in either instance, Defendant Officers contend that Yessin's First Amendment claim should be dismissed. (Id.).

However, as detailed below, this Court finds that a genuine dispute as to a material fact remains as to whether arguable probable cause did exist under the present circumstances. Specifically, whether Yessin engaged in the requisite physical conduct to justify his arrest pursuant to

10

Fla. Stat. § 843.02. Accordingly, as a question remains as to whether arguable probable cause exited, the Court denies Defendant Officers' Motion on this ground.

### iv. **Fourth Amendment**

The Fourth Amendment encompasses the right to be free from arrest without probable cause. Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). The Eleventh Circuit has concluded that "the standard for determining the existence of probable cause is . . . whether a reasonable man would have believed probable cause existed had he known all of the facts known by the officer." Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998) (internal citation and quotation omitted). For probable cause to exist, the arrest "must be objectively reasonable under the totality of the circumstances." Id. at 1435.

As set forth in Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006):

> At the summary judgment stage, courts view the totality of the circumstances in the light most favorable to the nonmoving party. That is, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, we credit the non-moving party's version. Even though the facts as accepted at the summary judgment stage of the proceedings may not be the actual facts of the case, our analysis for purposes of summary judgment must begin with a

> description of the facts in the light most
> favorable to the plaintiff.

(internal citations and quotations omitted).

Probable cause constitutes an "absolute bar" to a section 1983 claim alleging false arrest. Rankin, 133 F. 3d at 1435. On the other hand, "[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." Rodriguez v. Farrell, 280 F.3d 1341, 1345 (11th Cir. 2002).

Whether a particular set of facts gives rise to probable cause or arguable probable cause for arrest depends on the elements of the crime. Crosby, 394 F.3d at 1333. In this case, Yessin was arrested for violating Fla. Stat. § 843.02, which provides:

> Whoever shall resist, obstruct, or oppose any
> officer . . . or other person legally authorized to
> execute process in the execution of legal process
> or in the lawful execution of any legal duty,
> without offering or doing violence to the person of
> the officer, shall be guilty of a misdemeanor of
> the first degree. . . .

Fla. Stat. § 843.02. To support a conviction under that statute, the state must prove two elements: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or

resistance of that lawful duty." <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1315 (11th Cir. 2003). The Court will discuss each element in turn.

### 1. <u>Legal Duty</u>

There is a distinction between a police officer in the lawful execution of a legal duty and a police officer who is merely on the job. <u>See</u> <u>e.g.</u>, <u>Jay v. State</u>, 731 So. 2d 774, 775 (Fla. 4th DCA 1999)(determining that "the officer . . . was merely on the job and not engaged in the lawful execution of any legal duty," as there was no evidence that the individuals the officer was detaining committed a crime). Job functions that fall "within the ambit of the lawful execution of any legal duty under Florida law include an officer[] (1) serving process, (2) legally detaining a person, and (3) asking a person for assistance with an ongoing emergency." <u>Storck</u>, 354 F.3d at 1315.

In determining whether an officer was engaged in the lawful execution of a legal duty, the Court "must apply the legal standards governing the [officer's] duty . . . at the point that [the obstruction] occurs." <u>Tillman v. State</u>, 934 So. 2d 1263, 1271 (Fla. 2006). "In cases involving an investigatory detention, it is necessary for the State to prove that the officer had a reasonable suspicion of criminal

activity that would support the detention." Davis v. State, 973 So. 2d 1277 (Fla. 2d DCA 2008).

Yessin suggests that no criminal activity was actually taking place at the time of his alleged obstruction, nor did Defendant Officers believe criminal activity was taking place. (Doc. # 136 at 8-9). Therefore, Yessin submits that Defendant Officers were not engaged in the lawful execution of a legal duty at the time of his arrest. (Id. at 9). However, this Court disagrees.

When Defendant Officers arrived at SideBern's they were focused on understanding the circumstances surrounding why they were dispatched to the scene. (Doc. # 75 at 7); see Freeman v. Town of Eatonville, Fla., 225 F. App'x 775 (11th Cir. 2006)(determining that a "reasonable police officer could believe he was lawfully executing a legal duty" when he responded to a nightclub because of reports of "several physical and verbal disturbances, including ones with gunfire"). When Newberry interviewed Dias, he concluded that he had probable cause to believe that criminal conduct - an offense of battery, or an affray, at the least – had occurred between Dias and Jacolow. (Doc. # 79 at 25). Newberry testified that based on Dias' statements, he also had probable cause to arrest both Dias and Jacolow for their involvement.

(Id. at 24-26). In fact, Newberry placed Dias in handcuffs, but chose to interview Jacolow to obtain her "side of the story." (Id.).

During Jacolow's interview, Yessin was arrested due to his alleged obstruction of the investigation. (Doc. # 70-2). This occurred while (1) Newberry had *at least* reasonable suspicion that criminal activity occurred, (2) Dias was being legally detained, and (3) Newberry had at least reasonable suspicion that he could also arrest Jacolow. Therefore, the Court finds that there is no genuine issue of material fact as to whether Defendant Officers were engaged in the execution of a legal duty at the time of Yessin's arrest.

## 2. Obstruction

Yessin suggests that, even if Defendant Officers had been engaged in the execution of a legal duty at the time of Yessin's arrest, this element alone would not be sufficient to establish arguable probable cause for the arrest of Yessin. (Doc. # 136 at 9). Instead, Yessin provides that "Florida law is well settled that, 'with limited exceptions, physical conduct must accompany offensive words to support a conviction under [Fla. Stat. § 843.02].'" (Id.)(citing Francis v. State, 736 So. 2d 97, 99 (Fla. 4th DCA 1999)). Yessin submits that the testimony of Defendant Officers

confirms that his arrest was made for a "mere verbal interruption." (Id. at 10). To that end, Yessin argues that Defendant Officers were without, at least, arguable probable cause to arrest him for a violation of Fla. Stat. § 843.02, pursuant to well-established case law. (Id.).

In 2009, the Florida Supreme Court determined that "to support a conviction for obstruction without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." C.E.L. v. State, 24 So. 3d 1181 (Fla. 2009). However, at the time of Yessin's arrest – in 2008 – the applicable law provided that:

> If a police officer is not engaged in executing process on a person, is not legally detaining that person, or has not asked the person for assistance with an ongoing emergency that presents a serious threat of imminent harm to person or property, **the person's words alone can rarely, if ever, rise to the level of an obstruction.**

D.G. v. State, 661 So. 2d 75, 76 (Fla. 2d DCA 1995)(finding juvenile's verbal protests and refusal to answer officer's questions, unaccompanied by physical opposition or threats, did not constitute obstruction)(emphasis added). Thus, at the time of Yessin's arrest, obstructive conduct rather than

offensive words was normally required to support a conviction under Fla. Stat. § 843.02. Id.; see also H.A.P. v. State, 834 So. 2d 237, 238-39 (Fla. 3d DCA 2002) (determining that defendant was not arrested for merely cursing at officers, but for refusing to leave area where officers were attempting to execute search warrant, which resulted in delay of execution of warrant); Francis, 736 So. 2d at 98 (finding that providing false information only became obstruction or resistance when the defendant also physically blocked the police officer's path); J.M. v. State, 960 So. 2d 813, 815 (Fla. 3d DCA 2007)(finding that juvenile violated Fla. Stat. § 843.02 as he refused to leave park after being ordered to leave area for public safety reasons); Wilkerson v. State, 556 So. 2d 453, 456 (Fla. 1st DCA 1990) (concluding that defendant was arrested not for yelling and cursing at officers, but for refusing to leave area where officers were attempting to make arrests as officers considered her physical presence to be obstructing or impeding them in the performance of their duty).

It is undisputed that Yessin approached Newberry's interview of Jacolow to offer his legal services. (Doc. ## 79 at 29; 92 at 9). At that time, Newberry stopped the interview and inquired as to whether Yessin was Jacolow's attorney;

17

Jacolow said "No." (Doc. ## 79 at 28; 88 at 3; 92 at 9; 101 at 5). As a result, Newberry warned Yessin that he needed to "back up and quit interfering in [his] investigation." (Doc. # 79 at 29). Newberry gave Yessin another warning, and stated that "[y]ou are interfering with my investigation, you need to back off." (Doc. # 70-2 at 4). Shortly thereafter, Leavy approached (Doc. # 53 at 31), and gave Yessin additional orders to leave the area. (Doc. # 94 at 107). Within moments, Yessin was arrested. (Doc. # 70-2 at 4).

Defendant Officers argue that after each instruction, Yessin either failed to move or only took a few steps back. (Doc. ## 54 at 119; 94 at 100). However, both Leavy and Newberry acknowledge that at no time did they provide Yessin with "specifics as to how far he needed" to move. (Doc. ## 79 at 40; 94 at 108).

Yessin concedes that he was told several times to "back off" and to not interfere. (Doc. ## 90 at 152-53). However, Yessin contends that he was compliant with the Officers' requests, and each time he was instructed to "back off" he "put [his] hands up" and backed off to the point where he "was out of ear shot" of the Jacolow interview. (Doc. ## 90 at 152; 91 at 58). According to Yessin, it was only after he

asked Leavy for the name and badge number of Newbery that he was arrested. (Doc # 90 at 167, 179).

In <u>Davis</u>, 451 F.3d at 767, the Eleventh Circuit provided:

Neither an owner's simple inquiry as to why officers are present on his property nor a person's attempt to bring a dangerous situation to the officer's attention can be construed as obstruction of justice or disorderly conduct. *Nor can a citizen be precluded by the threat or arrest from asking to speak to an officer's superior or from asking for an officer's badge number. Those inquiries likewise do not constitute obstruction of justice or disorderly conduct.*

(emphasis added). Therefore, taking Yessin's assertion as true, Yessin asking for such information – without more – is insufficient to establish arguable probable cause.

Defendant Officers further testify that at all relevant times, Yessin's conduct was not physically threatening, Yessin did not raise his voice, or incite violence of a crowd. (Doc. ## 53 at 41; 75 at 13; 79 at 50); <u>see</u> <u>D.A.W. v. State</u>, 945 So. 2d 624 (Fla. 2d DCA 2006)(finding no obstruction as plaintiff "remained at a distance and did not approach the officer or physically threaten the officer or arrestee," and "[t]here is no evidence that [plaintiff] made any statements encouraging anyone to take action against the police officer."); <u>Davis</u>, 451 F.3d at 759 (finding that the facts, viewed in the light most favorable to Davis, could not support

a finding of even arguable probable cause for either
obstruction of justice or disorderly conduct as it was
undisputed that Davis did not physically interfere with or
obstruct the deputies). In fact, Officer Newberry admits that
he had no intent to arrest Yessin as long as he was able to
continue his investigation, and that he found Yessin's
conduct to be just "irritating." (Doc. # 53 at 41).

Therefore, when viewing the evidence in the light most
favorable to Yessin – as this Court must do at this time –
there remains a dispute as to a material fact; specifically,
whether Yessin engaged in the requisite physical conduct –
not merely verbal – to establish arguable probable cause to
arrest under Fla. Stat. § 843.02. Namely, Defendant Officers
argue that although not threatening to Defendant Officers,
Yessin "physically blocked [Officer Newberry's] ability to
speak with the involved parties," and declined to heed the
Officers' orders to "back off" and "leave the area." (See
Doc. # 75 at 12). However, Yessin contends that he complied
with each instruction to "back off" and was far enough away
from the interview that there "was no way [Yessin] could
interfere in [Newberry's] investigation." (Doc. # 90 at 153).
Therefore, the Court finds that a dispute remains on the
second element - obstruction.

### 3. <u>Fellow Officer Doctrine</u>

To the extent Officers Reese, Kennedy, and Murphy assisted in the seizure of Yessin, they rely on the fellow officer doctrine as a shield to protect them from civil liability. (Doc. # 70 at 19-21). The fellow officer doctrine "allows an arresting officer to assume probable cause to arrest a suspect from information supplied by other officers." <u>Voorhees v. State</u>, 699 So. 2d 602, 609 (Fla. 1997). Under this doctrine, "[t]he collective knowledge of police investigating a crime is imputed to each member. . . .'" <u>Johnson v. State</u>, 660 So. 2d 648, 657 (Fla. 1995); <u>see</u> <u>Dep't of Highway Safety & Motor Vehicles v. Shonyo</u>, 659 So. 2d 352, 353 (Fla. 2d DCA 1995) ("The fellow officer[ ] rule allows the arresting officer to assume that probable cause to arrest a suspect exists when he relies upon the representations of an officer who has firsthand knowledge of the events.").

The information "can involve direct communications between officers who have sufficient information and the officer who stops the suspect, or it can involve general communications among officers of whom at least one possesses the required level of suspicion." <u>Strickroth v. State</u>, 963 So.2d 366, 368 n.1 (Fla. 2d DCA 2007). However, an otherwise illegal arrest cannot be insulated from challenge by the fact

that the arresting officer relied on erroneous information from a fellow officer. Walker v. State, 606 So. 2d 1220, 1221 (Fla. 2d DCA 1992). Furthermore, when the arresting officer observed the same events as his fellow officer, the doctrine does not apply. Killmon v. City of Miami, 199 F. App'x 796, 800 (11th Cir. 2006)(finding that the fellow officer doctrine did not apply as the facts did not support a finding that probable cause existed and the defendant officers were all present at the time of the arrest).

Even assuming Defendant Officers could rely on this doctrine, there are numerous factual issues that preclude summary judgment on this point. Particularly, each Officer argues that they relied on Leavy's belief that he had probable cause to arrest Yessin as he had "more knowledge of the totality of Yessin's conduct from the outset." (Doc. # 70 at 19-21). However, at the same time, each Officer testifies that they observed portions of Yessin's alleged obstructing conduct. (See Doc. ## 95-97; 102-104). If that is the case, the fellow officer doctrine does not apply under the circumstances.

Nonetheless, the record is unclear whether these Officers are claiming Leavy was solely responsible for the decision to arrest Yessin or that they each made their own

independent determination. (See Doc. ## 95 at 95, 131; 97 at 33-34). This raises a factual dispute that cannot be resolved on a summary judgment motion. See Lippman v. City of Miami, 724 F. Supp. 2d 1240, 1256 (S.D. Fla. 2010)(finding that a factual dispute existed precluding summary judgment on whether the fellow officer doctrine applied).

However, as this Court finds that a question of fact remains as to whether arguable probable cause existed, this Court declines to address Defendant Officers' argument for qualified immunity as to the false arrest claims.[1] See Lee v. Ferraro, 284 F. 3d 1188, 1195 (11th Cir. 2002)(arguable probable cause is "all that is required for qualified immunity to be applicable to an arresting officer."). Furthermore, as it remains to be determined whether Defendant Officers had arguable probable cause to make Yessin's arrest, the Court finds that it is premature to address the excessive force claims as "even de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." Brown, 608 F.3d at 738 n.21.

---

[1] It is within the Court's discretion to decide which of the two prongs of the qualified-immunity analysis to address first (i.e., whether the official violated a statutory or constitutional right and whether the right was clearly established at the time of the challenged conduct). Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011).

For the reasons set forth above, the Court grants in part and denies in part Defendant Officers' Motion for Summary Judgment.

**B. City of Tampa's Motion for Summary Judgment**

To succeed on his claim against the City of Tampa, Yessin must establish that, (1) his constitutional rights were violated, (2) the City maintained a policy or custom that constituted deliberate indifference to his constitutional rights, and (3) the violation was caused by the policy or custom. McDowell v. Brown, 392 F. 3d 1283, 1289 (11th Cir. 2004). Although, there remains a factual dispute as to whether Yessin's constitutional rights were violated by Defendant Officers, this Court will address City of Tampa's Motion under the assumption that a constitutional violation occurred.

In Monell, the Supreme Court concluded that a municipality or local government entity "cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory." 436 U.S. 658, 691 (1978). However, "a municipality or other local government may be liable under [§ 1983] if the government body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). A plaintiff seeking to impose liability on a

governmental entity under § 1983 must identify a "municipal 'policy or custom' that caused the plaintiff's injury." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u>, 520 U.S. 397, 403 (1997).

A plaintiff may establish liability pursuant to a municipal policy when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986). Alternatively, "to prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" <u>Brown v. City of Ft. Lauderdale</u>, 923 F.2d 1474, 1481 (11th Cir. 1991)(quoting <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123 (1988)).

### i. **False Arrest**

Yessin contends that there is a widespread practice amongst Tampa Police Officers in the unconstitutional application of Fla. Stat. § 843.02, as a result of the City of Tampa's failure to train, supervise, and discipline its

officers. (See Doc. ## 2, 137). However, the "City is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated [Yessin's] constitutional rights." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Rather, there are "limited circumstances" where an allegation of failure to train or supervise can serve as the basis for § 1983 liability. Id. Namely, a city must either have an express written or oral policy of inadequately training and supervising its employees, or its failure to train and supervise must amount to "deliberate indifference to the rights of persons with whom the police come into contact." Id. (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

To establish liability for a city's "deliberate indifference," a "plaintiff must present some evidence that the [City] knew of a need to train and/or supervise in a particular area and the [City] made a deliberate choice not to take any action." Id. at 1350. A plaintiff may demonstrate that the defendant was on notice of the need to train its employees by showing either of the following: "(1) the government's employees face clear constitutional duties in recurrent situations; or (2) a pattern of constitutional

26

violations exists such that the government knows or should know that corrective measures are needed." <u>D.H. ex rel. Dawson v. Clayton Cnty. Sch. Dist.</u>, 904 F. Supp. 2d 1301, 1305 (N.D. Ga. 2012)(internal quotation omitted).

To support his position, Yessin relies on the testimony of Corporal Kellie Daniel – a seventeen year veteran of the Tampa Police Department. (<u>See</u> Doc. # 57). Corporal Daniel testified that "when she was a supervisor," officers would "arrest . . . bystanders [pursuant to Fla. Stat. § 843.02] who may be verbally interfering with [their] investigation to get information from someone who had potentially committed a crime. . . ." (<u>Id.</u> at 13). Yessin argues that Daniels' testimony leaves

> no doubt that when arresting persons for verbal conduct that may be merely distracting, Tampa Police Department customs made no distinction based on whether the officer allegedly interfered with was involved in a distinct legal duty, as defined by established Florida law, or whether the officer was simply engaged in a general duty of the job and made no distinction as to whether the verbal conduct was by a bystander as opposed to a person who was the direct subject of a defined legal duty.

(Doc. # 137 at 6-7).

Moreover, Yessin points to Leavy's testimony that Yessin was arrested, in large part, because of "his understanding

that mere verbal distraction during an ongoing police activity violates section 843.02 and permits arrest." (Id. at 7). According to Yessin, Leavy's understanding of the application of Fla. Stat. § 843.02 was formed based on his training and experience operating in the customs and practice of the Tampa Police Department. (Id.). Therefore, it is Yessin's position that the testimony of Daniels and Leavy demonstrates that a practice of unconstitutionally enforcing Fla. Stat. § 843.02 has occurred for years within the Tampa Police Department, sufficient to establish a widespread practice.

However, this testimony, fails to demonstrate a "widespread practice [amongst Tampa Police officers] that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Brown, 923 F.2d at 1481. Namely, that Tampa Police officers had a widespread practice to knowingly enforce Fla. Stat. § 843.02 in an unconstitutional manner or that the City permitted such unlawful enforcement.

Yessin further points to the 2005 arrest of Brenda Bellay to establish notice. (Doc. ## 2, 137). Bellay, a passenger in a vehicle, was arrested pursuant to Fla. Stat. § 843.02 for

interfering with Leavy's[2] ability to impound the vehicle after the driver was arrested for driving under the influence. (Id.). Although the State Attorney's office filed the obstruction charge against Bellay, it later terminated the prosecution. (Doc. # 137-1).

According to Yessin, in January of 2007, Bellay filed a statutory Notice of Claim pursuant to Fla. Stat. § 768.28(6), which was provided to the Mayor of Tampa and its Chief of Police. (Doc. # 137-5). Thereafter, in February of 2008, Bellay filed a civil lawsuit in state court and alleged the City's liability for false arrest and negligence. (Doc. # 137-1). In April of 2010, a jury returned a verdict in Bellay's favor, which was affirmed by the Second District Court of Appeal. (Doc. # 137-7).

The City posits that it was only made aware of the disposition of Bellay's criminal charges when Bellay notified the City that she intended to file a civil lawsuit. (Doc. # 52 at 12-13). However, Yessin suggests that the City was apprised of the reasons for the State Attorney's dismissal of Bellay's charges – under Fla. Stat. § 843.02 - when Bellay

---

[2] Officer Leavy was also a responding officer in the Bellay arrest.

furnished a public record request to the Mayor and City of Tampa. (Doc. # 137 at 12).

This Court finds that a single cited incident – from 2005 – is not indicative of Tampa Police Department's alleged widespread practice of false arrests, under Fla. Stat. § 843.02; especially, as the facts of Bellay's arrest are easily distinguishable from the case at bar. City of Okla. City v. Tuttle, 471 U.S. 808, 823–24 (1985)("Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality); Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991)("A single incident would not be so pervasive as to be a custom," because a custom must be such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.")(internal citation omitted); see also Mercado v. City of Orlando, 407 F. 3d 1152, 1162 (11th Cir. 2005)("[W]hen there is no evidence of sufficient prior similar incidents, the Plaintiff cannot meet his burden of establishing the 'affirmative link' showing that a different handling of the prior incidents, via training, supervision, or discipline, would have prevented his arrest.").

Yessin further argues that the City is liable as it failed to adequately train its officers by disseminating "legal bulletins" concerning Fla. Stat. § 843.02 and by failing to implement procedures to monitor prosecutorial decisions and judicial dismissals relating to Fla. Stat. § 843.02. (See Doc. # 137). Yessin's argument, however, is based entirely on speculation and Yessin has failed to provide a basis for this Court to infer that any lack of such procedures can be attributed to inadequate training of Tampa Police officers.

Therefore, for the reasons stated above, Yessin has presented insufficient evidence to create a dispute as to material facts concerning whether the City had the requisite notice of a problem with the enforcement of Fla. Stat. § 843.02 or its training programs.

## ii.  **Excessive Force**

Yessin also contends that the City has a widespread practice of engaging in excessive force to execute arrests. (Doc. ## 2, 137). To support this position, Yessin cites to Thompson v. Douds, 852 So. 2d 299 (Fla. 2d DCA 2003). In Thompson, the Second District Court of Appeal reversed the circuit court's grant of qualified immunity and found that

31

the officers' use of force was objectively unreasonable and violated the arrestee's Fourth Amendment rights. Id.

Yessin suggests that in light of Thompson, the City was on notice that officers were engaged in excessive force practices, and thus, there was a need to supervise and discipline its officers for engaging in such conduct. (Doc. # 137). However, the City posits that Yessin's citation to Thompson is insufficient to establish municipal liability, as Thompson is factually distinguishable from the present matter such that no "affirmative link" of causation could be established. (Doc. # 52 at 24). Rather, "it would be speculative to presume that any use-of-force charges which could have stemmed from Thompson would have prevented the use-of-force in this case." (Id.). This Court agrees. Yessin's citation to one instance where excessive force was found is insufficient to impute the requisite notice sufficient to establish liability against the City.

Furthermore, Yessin contends that "through its implementation of written arrest procedures, [the City] created a custom and practice of using excessive force to execute arrests." (Doc. # 137 at 11). Namely, as it relates to this action, Yessin argues that Leavy engaged in excessive force as he did not comply with arrest procedures - he

allegedly went "hands on" prior to announcing Yessin was under arrest. (Id. at 17). The relevant arrest procedure – SOP 307 III – states in relevant part:

> A. To execute an arrest, an officer must cause the person to be arrested to be informed of the fact of arrest, of the officer's authority, and of the reason for the arrest. The touching of the person is not necessary to complete the arrest.

(Id.). Further, SOP 307 III (B) provides that "a delay in giving prompt notice of cause for arrest is only permitted when the officer reasonably believes that giving such notice would be dangerous or would imperil the making of the arrest." (Id.).

Yessin relies on the testimony of Corporal Michael Rivera to demonstrate that there was a custom of improper use of the arrest procedure. (Doc. # 137 at 18). Rivera testified that he routinely instructs officers that the decision to go "hands on" before announcing arrest and providing a suspect the opportunity to voluntarily comply is entirely within the officers' discretion. (Doc. # 98 at 32). Furthermore, Captain Marc Hamlin testified that it is a "discretionary question" as to whether it is proper to go hands on prior to announcing arrest. (Doc. # 137-3 at 84-85). Thus, Yessin submits that the testimony of Rivera and Hamlin demonstrates that the Tampa

Police Department had a widespread practice of using excessive force when effecting arrest, which the City of Tampa allowed. (Doc. # 137 at 17-19).

Yessin has not provided this Court with a documented instance of excessive force as a result of a Tampa Officer going "hands on" prior to arrest, which would provide the requisite notice to the City. Without such notice, the City cannot be said to be deliberately indifferent, and thus liable for the allegedly unconstitutional actions of its officers.

For the reasons set forth above, Yessin has failed to supply sufficient evidence of custom or policy to support a claim under section 1983 against City of Tampa. As a result, the Court grants City of Tampa's Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant City of Tampa's Motion for Summary Judgment (Doc. # 52) is **GRANTED.**

(2) Defendant Officers' Motion for Summary Judgment (Doc. # 70) is **GRANTED IN PART and DENIED IN PART** as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of February, 2015.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All counsel of record

35